IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

AURELIUS JEFFREY,

      Plaintiff,

      v.                                    CASE NO. 2:14-cv-10374

CAROLYN W. COLVIN,
      Acting Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Brief in Support of the Defendant's Decision (ECF No.12) and Plaintiff's Reply to Defendant's Brief in Support of Defendant's Decision (ECF No. 13).

Background

Aurelius Jeffrey, Claimant, protectively filed for disability insurance benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act and supplemental security income (SSI) under Title XVI of the Social Security Act on March 23, 2010 (Tr. at 182-183 and Tr. at 186-189). Claimant alleged in his application for disability insurance benefits (DIB) that he became unable to work because of his disability condition on March 16, 2010 (Tr. at 182). In his application for supplemental security income (SSI), Claimant alleged that his disability began on September 1, 2007 (Tr. at 186). The claims were denied initially on July 16, 2010 (Tr. at 66-70 and Tr. at 71-75) and upon reconsideration on December 29, 2010 (Tr. at 80-82 and Tr. at 83-85). Claimant filed a written request for hearing on January 26, 2011(Tr. at 86-88). Claimant stated that he disagreed with the determination made on his claim for SSI Disability/Title II

Benefits because the decision was not based on the weight of credible evidence and was contrary to applicable law (Tr. at 86). Claimant appeared in person for a hearing before an Administrative Law Judge (ALJ) in West Virginia on May 14, 2012 (Tr. 56-61). No testimony was taken and the case was postponed so that Claimant could obtain new counsel. On September 19, 2012, Claimant appeared in person, with counsel, and testified at a hearing before an Administrative Law Judge (ALJ) in Roanoke, Virginia (Tr. at 32-55). In the Decision dated October 26, 2012, the ALJ determined that Claimant was not entitled to DIB or SSI because he was not disabled under the Social Security Act (Tr. at 9-31). On December 21, 2012, Claimant requested a review by the Appeals Council because the decision was contrary to the medical evidence and regulations (Tr. at 8). On December 18, 2013, the Appeals Council received additional evidence from Claimant which it made part of the record (Tr. at 5). The evidence was Statement of Contentions submitted by Jan Dils, Esq. dated December 20, 2012, admitted as Exhibit 19E. On December 18, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1). The Appeals Council stated that it considered Claimant's reasons for disagreeing with the decision and the additional evidence received. The Appeals Council found that this information did not provide a basis for changing the ALJ's decision (Tr. at 1-2).

On February 14, 2014, Claimant brought the present action requesting this Court to review the decision of the defendant and that upon review, it reverse, remand or modify the decision.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2014).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2014).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant engaged in substantial gainful activity during the period from July 2011 to March 2012, however, there has been a continuous 12-month period[1] during which he/she did not engage in substantial gainful activity (Tr. at 14-15).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of schizoaffective disorder, bipolar type; gender identity disorder; history of polysubstance abuse and dependence, in remission; scoliosis; headaches; and degenerative joint disease of the left knee.  (*Id.*)  At the third inquiry, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or equals the level of severity of any listing in Appendix 1.  The ALJ then found that Claimant has a residual functional capacity for the full range of medium work, reduced by nonexertional limitations[2].  Transferability of job skills is not material to the determination of disability because Claimant has been found to be "not disabled" (Tr. at 24).  As a result, Claimant can perform occupations such as auto detailer, laundry laborer, mail clerk and apparel stock checker (Tr. at 25)   On this basis, benefits were denied.

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

---

[1]  The ALJ's findings address the period(s) in which the Claimant did not engage in substantial gainful activity.

[2] The ALJ held that Claimant can occasionally climb ramps and stairs, but not ladders, ropes or scaffolds.  He/she can frequently balance and stoop, and occasionally kneel, crouch and crawl.  He/she should avoid concentrated exposure to excess noise, excessive vibrations and hazards.  He/she cannot perform complex tasks or skilled work. He/she is limited to no more than occasional interaction with others.

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 36 years of age on the date of the ALJ's decision, October 26, 2012. Claimant has a high school education and approximately one year of college education courses. Claimant reports to attending 9 substance use treatment programs within a period of 10 years (Tr. at 425). Claimant spent 4 years in prison for burglary and sexual assault and was released in March 2010 (Tr. at 40). After release from prison, Claimant worked at Taco Bell, Arby's and in a general store (Tr. at 35, 38). Claimant has received a hysterectomy and breast reduction as part of a gender change process to transition from a female to a male (Tr. at 41). Claimant receives testosterone injections (Tr. at 40).

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ's residual functional capacity assessment failed to consider the impact of Claimant's mental impairments on his/her functional ability as required by Social Security Ruling 96-8p. Claimant asserts that the ALJ failed to properly evaluate his/her credibility, "especially in light of his multiple severe mental impairments" (ECF No. 10).

<u>Medical Record</u>

On August 28, 2007, Jennifer Scarozza, M.D., a psychiatrist who treated Claimant while he/she was incarcerated, diagnosed Claimant with bipolar disorder, type II, history of polysubstance dependence and rule out personality disorder, not otherwise specified (Tr. at 361). However, Dr. Scarozza noted that Claimant's mood had improved on his/her current dosage of Lamictal.  Claimant reported that his/her appetite, energy and sleep were all "very good," and a mental status examination was unremarkable.  Dr. Scarozza noted that Claimant was fairly well groomed; cooperative; had good eye contact, normal speech and fair insight and judgment; and was in a self-described "excellent" mood.  Claimant's thoughts were organized, there was no evidence of psychosis or delusions and Claimant denied any suicidal or homicidal ideation or auditory/visual hallucinations.  Dr. Scarozza maintained Claimant's Lamictal regimen at the same dosage. (*Id.*)

On November 5, 2007, Claimant reported that he/she was doing very well overall, his/her medications were working and his/her mood was stable (Tr. at 362).  Dr. Scarozza continued Claimant's regimen of Lamictal. (*Id.*)  On January 28, 2008, Dr. Scarozza again reported that Claimant's mood was stable on his/her regimen of Lamictal and that a mental status examination was unremarkable (Tr. at 363).  Claimant reported that he/she liked reading and was exercising for one hour per day and making art.

On July 14, 2008, Claimant reported that his/her mood, appetite and sleep had all been "very good," he/she denied any crying spells or elevated mood and he/she reported that he/she had been keeping busy in AA, playing tennis and volleyball, listening to music, reading and attending Bible study. (*Id.*)  Claimant reported that his/her concentration and attention were good.  Dr. Scarozza continued Claimant's regimen of Lamictal.

On September 23, 2008, Claimant reported that his/her mood was improved, he/she was no longer feeling stressed and he/she was back at work (Tr. at 368).  Dr. Scarozza prescribed Lamictal and Remeron.  From December 1, 2008, through March 8, 2010, Scott Holbrook, a nurse practitioner, reported that Claimant was stable on his/her medications (Tr. at 369-384).

On April 22, 2010, approximately one month after Claimant applied for disability benefits, Dorothy Miller, APN, diagnosed schizoaffective disorder, bipolar type; anxiety disorder, not otherwise specified; pre-menstrual dysphoric disorder; and R/O borderline personality disorder (Tr. at 429).  Ms. Miller noted that Claimant had recently been released from prison, after serving four years, and was living with his/her grandparents (Tr. at 424).  Claimant reported that he/she had been out of prison[3] for four weeks and has been off his/her prescriptions of Lamictal and Remeron for the previous three weeks.  On a mental status examination, Claimant reported that he/she felt "speeded up often;" his/her mood was content; his/her affect was labile; his/her speech was rapid and pressured, but articulate and coherent; he/she had ideas of reference, paranoid tendencies and obsessions without compulsions; he/she reported hallucinations of people talking and plotting against him/her as well as persecutory and demonic voices; he/she was paranoid and had mild delusions; he/she had vague suicidal thoughts without plans or intent; his/her cognition was intact; he/she was alert and well-oriented; his/her memory was impaired; he/she was able to focus and attend, if interested; he/she was "not really social" and preferred to be along; his/her insight and judgment were fair; and his/her intelligence was above average (Tr. at 428-429).  Ms. Miller opined that Claimant's prognosis was "fair" (Tr. at 429).

---

[3]  Claimant reported to being treated for psychiatric symptoms in prison with Lamictal and Remeron (Tr. at 424).

On May 12, 2010, State agency medical consultant, Uma Reddy, M.D., reviewed the medical evidence on record and stated that Claimant had the residual functional capacity to perform work at the medium level of exertion.  Dr. Reddy indicated that Claimant could lift and/or carry 50 pounds occasionally and 25 pounds frequently, and stand, walk and sit for six hours in an eight-hour workday with postural and environmental limitations.  On December 23, 2010, State agency medical consultant, Marcel Lambrechts, M.D., reviewed the medical evidence of record and affirmed Dr. Reddy's assessment.

On May 20, 2010, Ms. Miller noted that Claimant had been off of his/her psychotropic medications for four weeks and was experiencing increased symptoms (Tr. at 579).  Ms. Miller prescribed Claimant's medications. (*Id.*) On June 17, 2010, Ms. Miller reported that Claimant was doing well on his/her medications (Tr. at 489).  Claimant reported feeling frustrated in trying to get health insurance.  (*Id.*)   On July 8, 2010, Ms. Miller reported that Claimant was doing well and noted his/her eagerness for a transgender change (Tr. at 487).   She continued his/her medication regimen.

On July 16, 2010, James Binder, M.D., a state agency psychiatric consultant, reviewed the medical evidence, completed a Psychiatric Review Technique form (PRTF) and opined that Claimant had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration (Tr. at 448).  Dr. Binder stated that, despite his/her limitations, Claimant would be capable of learning and performing basic work-like tasks (Tr. at 454).

Also, on July 16, 2010, Dr. Binder completed a Mental Residual Functional Capacity Assessment (Tr. at 452-453).  Dr. Binder opined that Claimant was moderately limited in his/her

ability (1) to maintain attention and concentration for extended periods; (2) to work in coordination with or proximity to others without being distracted by them; (3) to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) to interact appropriately with the general public; (5) to accept instructions and respond appropriately to criticism from supervisors; (6) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. at 452-453).  On December 21, 2010, Joseph A. Shaver, Ph.D., reviewed the case file and affirmed Dr. Binder's opinions (Tr. at 504).

On September 2, 2010, Ms. Miller stated that Claimant was doing well (Tr. at 576). Claimant's mood and affect were stable.  Ms. Miller stated that Claimant had improved with medications and she continued the medications.

On December 10, 2010, Michael T. Webb, M.D., stated in a letter to the West Virginia Department of Health and Human Services that Claimant met the American Psychiatric Association's four diagnostic criteria[4] for gender identity disorder (Tr. at 521). Dr. Webb reported that Claimant was receiving testosterone injections and would be undergoing breast reduction and a hysterectomy in order to change his/her gender from female to male (Tr. at 521).

On February 26, 2011, Ms. Miller reported that Claimant was doing well.  His/her mood was stable (Tr. at 594).  Claimant reported to seeing a girl at church.  (*Id.*)  On March 23, 2011, Ms. Miller noted that Claimant was doing well on his/her medications and was staying with his/her grandmother in order to assist with her care (Tr. at 571).  Claimant was feeling less

---

[4]  In the United States, the American Psychiatric Association permits a diagnosis of gender identity disorder if the four diagnostic criteria in the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, Text-Revised (DSM-IV-TR) are met.  The criteria are:  long-standing and strong identification with another gender; long-standing disquiet about the sex assigned or a sense of incongruity in the gender-assigned role of that sex; the diagnosis is not made if the individual also has physical intersex characteristics; and significant clinical discomfort or impairment at work, social situations or other important life areas.

depressed.  Ms. Miller continued Claimant's medications.  On May 15, 2011, Ms. Miller noted Claimant reported that he/she was in a relationship and doing well with his/her gender change (Tr. at 572).  Claimant reported visual hallucinations. (*Id.*) Ms. Miller continued Claimant's medications. On June 30, 2011, Ms. Miller reported that Claimant was doing well (Tr. at 573). Claimant reported that he/she was out of his/her relationship.  He/she was working at Taco Bell. (*Id.*)  Ms. Miller reported there were no stressors and Claimant had improved with medication.

On September 22, 2011, Ms. Miller reported that Claimant was doing pretty good and was working at Taco Bell (Tr. at 574).  Claimant's mood was reported as good but he/she was experiencing ups and downs due to his/her parole officer.  (*Id.*)  On November 4, 2010, Ms. Miller reported that Claimant appeared masculine and had been taking hormones (Tr. at 575). Claimant reported a "panic episode."  (*Id.*)  Ms. Miller stated that Claimant's stressors were family, financial, legal and identity related.

On January 5, 2012, Ms. Miller reported that Claimant was no longer in a relationship and was being harassed by coworkers (Tr. at 599).  His/her grandparents had passed away and he/she was living alone.  (*Id.*) Ms. Miller continued Claimant's medications.

On April 5, 2012, Ms. Miller noted Claimant's report of losing his/her job as a manager at Wendy's and having issues with employment due to his/her criminal record (Tr. at 568).  A mental status examination revealed avoidant eye contact, but was otherwise unremarkable.  Ms. Miller continued Claimant's medications.  On July 5, 2012, Ms. Miller noted Claimant's report of recent depression due to his/her inability to find work (Tr. at 567).  However, Claimant advised that he/she was volunteering at a thrift shop. (*Id.*)

On August 9, 2012, Jennifer N. Stewart, PAX, conducted a physical examination of Claimant for the West Virginia Department of Health and Human Resources with major

10

diagnoses of bipolar disorder, schizoaffective disorder, scoliosis and minor diagnoses of left knee pain.  Physical examination revealed reduced range of motion of the left knee and back and scoliosis, but was otherwise unremarkable revealing normal posture, gait, lungs, heart, abdomen and neurologic.  Psychiatric examination revealed subjective reports of bipolar disorder and schizoaffective disorder, but normal speech.  Ms. Stewart opined that Claimant was unable to perform full-time work for approximately one year.

On September 6, 2012, Claimant reported to Princeton Community Hospital's emergency room asserting hallucinations and suicidal ideations.  Claimant was treated and discharged in stable condition.  Four days later, on September 10, 2012, Claimant presented to Kelley Jones, LSW, asserting hallucinations, delusions, depression, anxiety and suicidal ideation.  Claimant was treated, stabilized and discharged home with instructions to continue his/her medications and follow up with Ms. Miller.

Standard of Review

The role of this Court, on judicial review, is to determine whether the Commissioner's final decision is supported by substantial evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Id.*  In applying the substantial evidence standard, the Court should not "reweigh conflicting evidence, making credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F. 3d 585, 589 (4th Cir. 1996)).  "When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]."  *Id.*

<u>Discussion</u>

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. The Commissioner is required to include in the text of [his] decision a statement of the reasons for that decision. *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge. . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Claimant asserts that the ALJ's decision focused on "non-specific statements made by the plaintiff regarding the care of his/her grandmother and other various matters, which are unrelated to the medical evidence of record" in evaluating Claimant's credibility. In actuality, the ALJ demonstrated that Claimant's statements concerning the intensity, persistence and limiting effects of his/her symptoms were not fully credible because they were inconsistent with his/her self-reported activities and with the objective medical evidence on record.

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are entitled to substantial deference"). When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to

12

determine the extent to which the alleged symptoms limit the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c) and 416.929.

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible.  The ALJ held that Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the objective medical evidence, his/her self-reported activities and the ALJ's residual functional capacity assessment (RFC).

20 C.F.R. §§ 404.1529(c)(3) and 416.929 states that "[w]e will consider all of the evidence presented, including information about your work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons."

The medical records reveal that the medications have been relatively effective in controlling Claimant's symptoms.  The ALJ stated "[Claimant's] mental state has improved now that his physical appearance matches his gender identity" (Tr. at 23).  The ALJ held that "The medical evidence of record reflects that the claimant consistently tells mental health providers that he is doing well."

At the hearing, the ALJ asked Claimant if he could perform a job that did not involve social interaction, such as an office building night cleaner (Tr. at 43).  Claimant responded that because of his//her fear of leaving the house and dealing with the public, his/her attendance would be poor.  The ALJ appropriately points out in his decision that contrary to his/her testimony, Claimant leaves the house and interacts with the public in volunteering at a thrift store (Tr. at 48).

13

<u>Residual Functional Capacity Assessment</u>

The court proposes that the presiding District Judge find that the ALJ's determination that Claimant possesses the residual functional capacity to perform medium work is supported by substantial evidence.

SSR 96-8p states that

> [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.
> SSR 96-8p, 1996 WL 362207, *34477 (1996).

In his decision, the ALJ found that Claimant does not have an impairment or combination of impairments equal in severity to any listed impairment, as no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. The Court proposes that the presiding District Judge find that the ALJ adequately considered Claimant's non-severe impairments and Claimant's limitations in assessing his/her residual functional capacity.

The ALJ held that although Claimant's impairments limit his/her daily living activities to a degree, Claimant asserted daily activities are inconsistent with his/her complaints of disabling functional limitations (Tr. at 22). The ALJ found that the record and objective medical evidence reflects that Claimant's limitations mildly restrict his/her daily activities. Dr. Scarozza's visitation notes report of Claimant passing his/her GED test, exercising for one hour a day, doing art and reading. Dr. Scarozza reported that Claimant attends alcoholics anonymous, plays tennis and volleyball, listens to music and reads. Claimant's self-reported declarations of doing well on

his/her medications and plans to assist in the care of his/her grandmother conflict with his/her assertion of disabling impairments.

Claimant testified to volunteering at a thrift shop and taking care of his/her grandmother while she was living.  Claimant's adult function reports reflect daily living activities of reading the Bible, washing dishes, independent personal care, playing games, driving and shopping for groceries.

Credibility

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations.  *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

An ALJ's decision must "contain specific reasons for the findings on credibility, supported by the evidence in the case record" that are "sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p; 20 C.F.R. §404.1529.  An ALJ is required to evaluate seven factors in determining credibility.  SSR 96-7p states:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416929(c) describe the kinds of evidence, including the factors below, that the adjudicator *must* consider *in addition* to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1.   The individual's daily activities;
> 2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3.   Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms (emphasis added)

*See also Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); *Adkins v. Astrue*, 664 F.Supp. 2d 657, 667-668 (S.D.W.Va. 2009).

The ALJ ultimately held that Claimant's allegations are not entirely credible (Tr. at 23). Claimant acknowledged, and the medical evidence of record supports, that his/her mental state has improved now that his/her physical appearance matches his/her gender identity.  Claimant was in prison for a criminal sexual act for approximately four years and was released in March 2010, the same month Claimant filed his/her disability application.  His/her alleged disability onset date was while he/she was still incarcerated.  Claimant's statements about his/her relationships were inconsistent.  Although Claimant reported to being in a relationship when speaking to Dr. Scarroza, he testified at the hearing to not having a relationship since 2007 (Tr. at 51, 572).

The ALJ pointed out various acts and assertions by Claimant which reduced the credibility of his/her disability allegations:

Activities of daily living include caring for a sick grandmother, who is now deceased.  The claimant worked full-time for nine months in fast food, including as an assistant manager in 2011/2012, but was fired after conflict with his manger.  When asked why he could not perform a job with little interaction with others, he indicated he would have attendance problems, but it is notable that attendance was never a problem before, and this

16

allegation is not very credible.   Moreover, the claimant still
volunteers at a thrift shop where he interacts with mangers and the
public. (Tr. at 23).

## Vocational Expert

At the hearing, the ALJ asked a vocational expert whether jobs existed in the regional and

national economy for a hypothetical individual with Claimant's age, education, work experience

and residual functional capacity.   The vocational expert testified that given all these factors the

individual would be able to perform the requirements of representative occupations such as auto

detailer, laundry laborer, mail clerk and apparel stock checker.   The ALJ held that pursuant to

SSR 00-4p[5], the VE's testimony is consistent contained in the Dictionary of Occupational Titles.

The ALJ found that Claimant's impairments do not meet or medically equal one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.   Substantial evidence supports

the determination of the ALJ.   The ALJ's decision reflects an adequate consideration of his/her

impairments.   The ALJ appropriately weighed the psychological and medical opinions and the

evidence of record in its entirety.   The ALJ appropriately relied on the evidence as a whole to

determine that Claimant is able to perform jobs that exist in the nation and region.   Accordingly,

the ALJ denied Claimant's application for DIB and SSI under the Social Security Act.

## Conclusion

The Social Security Act defines disability as the inability to do any substantial gainful

activity by reason of any medically determinable impairment, "which can be expected to result in

death, or which has lasted or can be expected to last, for a continuation period of not less than 12

months."   42 U.S.C. § 423(d)(1)(A).   To be found disabled, an individual must have a severe

---

[5] Social Security Ruling 00-4p requires the ALJ to inquire of the vocational expert about any possible conflict between [the vocational expert testimony] and information provided in the [Dictionary of Occupational Titles (DOT)] and resolve any conflicts.  SSR 00-4p.

impairment that precludes his/her from performing not only his/her previous work, but also any other substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912.  The claimant bears the ultimate burden of proving disability within the meaning of the Act.  *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

The ALJ's credibility determination is supported by substantial evidence.  The ALJ thoroughly discussed the opinion evidence of medical experts (Tr. at 23-29).  In discussing the weight given to the opinions, the ALJ points out consistencies or inconsistencies with the record as a whole.  Further, the ALJ discussed the inconsistencies in Claimant's assertions and found that Claimant's impairment(s) improved with treatment.

The ALJ followed Social Security Ruling 96-8p when determining Claimant's residual functional capacity.  The ALJ determined that Claimant's alleged mental impairments did not affect his/her functioning ability to the extent that Claimant asserted.  The ALJ ultimately held that considering Claimant's age, education, work experience and residual functional capacity, Clamant has the capacity to perform the full range of medium work (Tr. at 24).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and

then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   February 26, 2015

Dwane L. Tinsley
United States Magistrate Judge